# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Apple iPhone Cellphone
Model: 14 Plus
Seized as FP& F: 2025255200004001 Item: 006

)
)
)
)
)
)
)

Case No.    24MJ9116

**FILED**

Dec 20 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ VeronicaCota        DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-5, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 12/20/2024 _____

*Judge's signature*

City and state: _____ El Centro, California _____         HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-5
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**          Apple iPhone Cellphone
          Model: 14 Plus
          Seized as FP& F: 2025255200004001 Item: 006
          Seized from Kevin URENA-Villalobos
          **(Target Device #5)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 19, 2024, up to and including December 19, 2024, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

1

2                                                   **AFFIDAVIT**

3          I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn,

4    depose and state as follows:

5                                                 **INTRODUCTION**

6          1.      I submit this affidavit in support of an application for warrant(s) to search

7    the following electronic device(s):

8    **A-1:**                    Samsung Galaxy Cellphone
9                                Model: A13
                                 Seized as FP& F: 2025255200004001 Item: 002
10                               Seized from Lazaro OLIVARES-Barrera
11                               **(Target Device #1)**

12   **A-2:**                    Oppo Cellphone
13                               Model: Reno 6 Pro
                                 Seized as FP& F: 2025255200004001 Item: 003
14                               Seized from Brenda Jazmin BASTIDA-Avila
15                               **(Target Device #2)**

16   **A-3:**                    iPhone Cellphone
17                               Model: 12 Pro Max
                                 Seized as FP& F: 2025255200004001 Item: 004
18                               Seized from Edith GARCIA-Tercero
19                               **(Target Device #3)**

20   **A-4:**                    Pink iPhone Cellphone
21                               Model: Unknown
                                 Seized as FP& F: 2025255200004001 Item: 005
22                               Seized from Antonio Todd PAGE
23                               **(Target Device #4)**

24   **A-5:**                    Apple iPhone Cellphone
25                               Model: 14 Plus
                                 Seized as FP& F: 2025255200004001 Item: 006
26                               Seized from Kevin URENA-Villalobos
27                               **(Target Device #5)**

28

1  as further described in Attachments A-1 to A-5, and to seize evidence of a crime,
2  specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as
3  further described in Attachment B.

4      2.    The requested warrant relates to the investigation and prosecution of Orlando
5  Kevin URENA-Villalobos (URENA) and Antonio Todd PAGE (PAGE) for transportation
6  of illegal aliens Brenda Jazmin BASTIDA-Avila (BASTIDA), Edith GARCIA-Tercero
7  (GARCIA) and Lucero OLIVARES-Barrera (OLIVARES) (collectively, the "Material
8  Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California.
9  The Target Devices were seized from URENA, PAGE, and the Material Witnesses on or
10 about December 18, 2024, incident to the arrest of URENA, PAGE and the Material
11 Witnesses. The Target Devices are currently in the possession of the Department of
12 Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial,
13 California 92251, and located in the evidence room of that office.

14     3.    Because this affidavit is being submitted for the limited purpose of
15 establishing probable cause in support of the application for a search warrant, it does not
16 set forth every fact that I, or others, have learned during the course of this investigation.
17 The information contained in this Affidavit is based upon my personal observations and
18 knowledge, my review of various official reports, and upon conversations with other
19 Border Patrol Agents.  Dates and times are approximate.

20                          **EXPERIENCE AND TRAINING**

21     4.    I am a United States Border Patrol Agent with the Department of Homeland
22 Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have
23 been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and
24 graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New
25 Mexico. The Border Patrol Academy curriculum covers specialized training in the
26 Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the
27 United States Code, criminal law, and statutory authority.

28

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.    The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the

illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.      tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.      tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

4

d.      tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.     On December 18, 2024, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group#2 (ASU) were conducting surveillance in Calexico, California. At approximately 4:37 p.m., the Calexico Border Patrol Station Remote Video Surveillance System Operator (841) observed three individuals travelling northwest from the United States/Mexico International Boundary Fence (IBF) towards the All American Canal. Camera operators at 841 observed the three individuals climb the IBF from the Mexico side, scaled down the IBF into the United States, and walked to the 13 Check, climb over the fence and ran across, exiting through the northern fence. The three individuals continued to travel northbound and ran across Highway 98 and concealed themselves in the brush on the northside of Highway 98.

11.     Shortly after, the three individuals emerged from hiding and walked south to the northside of Highway 98. A sedan that was travelling westbound on Highway 98 passed their location, performed a U-turn and travelled towards the three individuals, slowed down and came to a complete stop. All three individuals ran to the sedan and entered the sedan. After the three individuals were inside of the sedan, the sedan merged back onto the westbound lane of Highway 98 and began slowly travelling westbound.

12.     Supervisory Border Patrol Agent (SBPA) W. Schwaderer positioned his unmarked Service vehicle and informed agents that the sedan was a white Toyota Camry (Toyota) bearing Arizona license plate. At this time a Customs and Border Protection

helicopter (Troy) arrived on scene and initiated mobile surveillance from above as the Toyota travelled westbound on Highway 98 and eventually merged eastbound on Interstate 8 into Yuma, Arizona. Once in Yuma, Arizona, agents watched as the Toyota travelled to West Dipper Street into the driveway of a mobile home. As the Toyota parked, Troy informed agents that the driver exited the Toyota, and the three additional passengers, later identified as Lazaro OLIVARES-Barrera (OLIVARES), Edith GARCIA-Tercero (GARCIA), and Brenda Jazmin BASTIDA-Avila (BASTIDA) walked away from the Toyota and into the mobile home.

13.    Shortly after the passengers entered the mobile home, the Toyota reversed out of the driveway and travelled away from the mobile home. ASU Agents then approached the mobile home, knocked, and announced themselves at the southwestern door. After knocking and announcing themselves, Border Patrol Agent-Intelligence (BPA-I) J. Bourque, who was positioned near the northeastern door of the trailer, watched as the door opened and OLIVARES, GARCIA and BASTIDA attempted to abscond from the mobile home. As BPA-I J. Bourque identified himself as a Border Patrol Agent he observed the northeastern door close and lock. OLIVARES, GARCIA and BASTIDA were questioned as to their citizenship by BPA-I J. Bourque. OLIVARES, GARCIA and BASTIDA admitted that they were citizens of Mexico. OLIVARES, GARCIA and BASTIDA admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry.

14.    Simultaneously, BPA-I L. Heipt, who was knocking and announcing himself as a Border Patrol Agent at the southwestern door was greeted by a female individual. BPA-I L. Heipt identified himself as a Border Patrol Agent and informed her that illegal aliens were observed entering the mobile home. BPA-I L. Heipt was granted permission to enter the mobile home and search for the illegal aliens. Upon entering the mobile home, BPA-I L. Heipt and SBPA A. Mills observed a shirtless male, later identified as Antonio Todd PAGE (PAGE) walk away from the northern end of the trailer towards them. After the

6

female individual and PAGE were determined to be United States Citizens, BPA-I L. Heipt and SBPA A. Mills searched the mobile home and did not find any additional illegal aliens.

15.    Both the female individual and PAGE were questioned as to their involvement in alien smuggling. When PAGE was questioned regarding his criminal history, PAGE admitted to a previous arrest for transporting illegal aliens. At that time, PAGE stated "Yeah, I know what's going on". PAGE, OLIVARES, GARCIA and BASTIDA were placed under arrest.

16.    While Agents were at the mobile home, several other BPAs and TROY continued surveillance on the Toyota and watched as it travelled south on Avenue C, and west on 16th Street. As the Toyota passed Avenue D, BPA-I A. Botello activated the emergency lights and siren of his unmarked Service vehicle and initiated a vehicle stop on the Toyota. The Toyota slowed down, pulled over and came to a complete stop. BPA-I A. Botello approached the Toyota with Border Patrol markings and insignia fully visible, identified himself as a Border Patrol Agent and questioned the driver, later identified as Kevin URENA-Villabos (URENA) as to his citizenship and involvement in alien smuggling. After URENA stated he was a United States Citizen, URENA was placed under arrest and was transported to the Calexico Border Patrol Station for processing.

17.    During a post-Miranda interview, PAGE stated he is a United States Citizen. PAGE stated that he has been arrested before for transporting illegal aliens. PAGE stated that today he was at Wal-Mart when he received a text from the one giving out the work. PAGE stated he was asked to take care of a couple of people and PAGE stated he said yes. PAGE stated he went home and the guy in the white car came. PAGE stated the people got out of the car and he told them to go to the side door of his house. PAGE stated he was to be paid $100.00 for each illegal alien just to watch them. PAGE stated that he was previously paid $700.00 to $800.00 a head. PAGE acknowledged that he was arrested for alien smuggling this evening.

18.    Material Witness BASTIDA stated she was born in Michoacan, Mexico, and that she is a citizen and national of Mexico with no documents allowing her to enter or

remain in the United States. BASTIDA stated that her parents made smuggling arrangements over the phone with unknown smugglers, and she was going to be smuggled to Jackson, Michigan for a fee of $10,000.00

19.    Material Witness GARCIA-Tercero stated she was born in Chihuahua, Mexico and that she is a citizen of Mexico. GARCIA stated she does not have any legal documents allowing her to live, work or remain in the United States legally. GARCIA stated she arrived at Mexicali on Sunday via airplane. GARCIA stated she agreed to pay around $10,000.00 to be smuggled illegally into the United States. GARCIA stated her destination was Los Angeles, California.

20.    Material Witness OLIVARES-Barrera, Lazaro stated he was born in Michoacan, Mexico, and that he is a citizen of Mexico. OLIVARES stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. OLIVARES stated he agreed to pay around $10,000.00 to be smuggled illegally into the United States. OLIVARES stated his destination was California to work in a diner.

21.    During a search incident to arrest of URENA, PAGE and the Material Witnesses, five cellphones were found: a black Samsung cellphone (Target Device #1) was found on OLIVARES' person by BPA-I J. Bourque and OLIVARES claimed ownership of this cellphone. A blue Oppo cellphone (Target Device #2) was found on BASTIDAS' person by BPA-I J. Bourque and BASTIDAS claimed ownership of this cellphone. An iPhone 12 Pro Max cellphone (Target Device #3) was located on GARCIA's person by BPA-I J. Bourque and GARCIA claimed ownership of this cellphone. A pink iPhone (Target Device #4) was located on PAGE's person by BPA J. Chrisly and PAGE claimed ownership of this cellphone. A black iPhone cellphone (Target Device #5) was found on URENA's person by BPA-I A. Botello and URENA claimed ownership of this cellphone. All cellphones were seized as evidence.

22.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally,

1  co-conspirators are often unaware of the subject's arrest and will continue to attempt to
2  communicate with the subject after the arrest to determine their whereabouts.  Given this,
3  I respectfully request permission to search the Target Devices for data beginning on
4  November 19, 2024, up to and including December 19, 2024, the day after the arrest of
5  URENA, PAGE and the Material Witnesses.

6                                              **METHODOLOGY**

7        23.    It is not possible to determine merely by knowing the cellular telephone's
8  make, model and serial number, the nature, and types of services to which the device is
9  subscribed, and the nature of the data stored on the device. Cellular devices today can be
10 simple cellular telephones and text message devices, can include cameras, can serve as
11 personal digital assistants, and have functions such as calendars and full address books,
12 and can be minicomputers allowing for electronic mail services, web services, and
13 rudimentary word processing. An increasing number of cellular service providers now
14 allow for their subscribers to access their device over the internet and remotely destroy all
15 the data contained on the device. For that reason, the device may only be powered in a
16 secure environment or, if possible, started in "flight mode," which disables access to the
17 network.  Unlike typical computers, many cellular telephones do not have hard drives or
18 hard drive equivalents and, instead, store information in volatile memory within the device
19 or in memory cards inserted into the device. Current technology provides some solutions
20 for acquiring some of the data stored in some cellular telephone models using forensic
21 hardware and software. Even if some of the stored information on the device may be
22 acquired forensically, not all the data subject to seizure may be so acquired. For devices
23 that are not subject to forensic data acquisition or that have potentially relevant data stored
24 that is not subject to such acquisition, the examiner must inspect the device manually and
25 record the process and the results using digital photography. This process is time and labor
26 intensive and may take weeks or longer.

27        24.    Following the issuance of this warrant, a case agent familiar with the
28 investigation will collect the Target Devices and subject them to analysis. All forensic

1   analysis of the data contained within the telephones, and their memory cards will employ

2   search protocols directed exclusively to the identification and extraction of data within the

3   scope of this warrant.

4        25.   Based on the foregoing, identifying, and extracting data subject to seizure

5   pursuant to this warrant may require a range of data analysis techniques, including manual

6   review, and, consequently, may take weeks or months. The personnel conducting the

7   identification and extraction of data will complete the analysis within ninety (90) days of

8   the date the warrant is signed, absent further application to this Court.

9   **CONCLUSION**

10        26.   Based on all the facts and circumstances described above, I believe that

11   probable cause exists to conclude that URENA, PAGE and the Material Witnesses used the

12   Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were

13   used to facilitate the offense by transmitting and storing data, specifically that described in

14   Attachment B, which constitutes evidence of violations of Title 8, United States Code,

15   Section 1324. I also believe that probable cause exists to believe that evidence of illegal

16   activity committed by URENA, PAGE, the Material Witnesses, and others continues to

17   exist on the Target Devices. Therefore, I respectfully request that the Court issue this

18   warrant.

19       I swear the foregoing is true and correct to the best of my knowledge and belief.

20

21   *Fernando Quiroz*
        Fernando Quiroz Border Patrol Agent

22           United States Border Patrol

23

    Attested to by the applicant in accordance with the requirements of Fed. R. Crim.

24   P. 4.1 by telephone on this 20th day of December, 2024.

25

26            12:50 p.m.

27   HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

28

10

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Samsung Galaxy Cellphone
              Model: A13
              Seized as FP& F: 2025255200004001 Item: 002
              Seized from Lazaro OLIVARES-Barrera
              **(Target Device #1)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**    Oppo Cellphone
Model: Reno 6 Pro
Seized as FP& F: 2025255200004001 Item: 003
Seized from Brenda Jazmin BASTIDA-Avila
**(Target Device #2)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**        iPhone Cellphone
               Model: 12 Pro Max
               Seized as FP& F: 2025255200004001 Item: 004
               Seized from Edith GARCIA-Tercero
               **(Target Device #3)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**          Pink iPhone Cellphone
                  Model: Unknown
                  Seized as FP& F: 2025255200004001 Item: 005
                  Seized from Antonio Todd PAGE
                  **(Target Device #4)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**          Apple iPhone Cellphone
                   Model: 14 Plus
                   Seized as FP& F: 2025255200004001 Item: 006
                   Seized from Kevin URENA-Villalobos
                   **(Target Device #5)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 19, 2024, up to and including December 19, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.